## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
------------------------------------------------------x
EARL MAITLAND,                          :    CIVIL ACTION NO.
                                        :    2:04-CV-2123
                        Plaintiff,      :
                                        :
            v.                          :
                                        :
GENTA INC., RAYMOND P. WARRELL, JR.     :
and LORETTA M. ITRI,                    :
                                        :
                        Defendants.     :
------------------------------------------------------x
FURINO,                                 :    CIVIL ACTION NO.
                                        :    2:04-CV-2132
                        Plaintiff,      :
                                        :
            v.                          :
                                        :
GENTA INC., ET AL.,                     :
                                        :
                        Defendants.     :
------------------------------------------------------x
JAY WASSERMAN,                          :    CIVIL ACTION NO.
                                        :    2:04-CV-2133
                        Plaintiff,      :
                                        :
            v.                          :
                                        :
GENTA INC., ET AL.,                     :
                                        :
                        Defendants.     :
------------------------------------------------------x
```

### MEMORANDUM OF LAW IN SUPPORT OF MOTION BY
### BIODUN JAIYESIMI, ARK CAPITAL MANAGEMENT, LLC,
### JAY AND DEBORAH WASSERMAN, AND JANAK JETHMALANI
### FOR CONSOLIDATION, FOR THEIR APPOINTMENT AS LEAD PLAINTIFFS
### AND FOR APPROVAL OF LEAD PLAINTIFFS' SELECTION OF LEAD COUNSEL

Genta-LdPlMem.wpd

```
-----------------------------------------------------x
RICHARD M. YARBRO,                    :      CIVIL ACTION NO.
                                      :      2:04-CV-2160
                         Plaintiff,   :
                                      :
              v.                      :
                                      :
GENTA INC., ET AL.,                   :
                                      :
                         Defendants.  :
-----------------------------------------------------x
SARAH SONTAG,                         :      CIVIL ACTION NO.
                                      :      2:04-CV-2162
                         Plaintiff,   :
                                      :
              v.                      :
                                      :
GENTA INC., ET AL.,                   :
                                      :
                         Defendants.  :
-----------------------------------------------------x
FRED DEN,                             :      CIVIL ACTION NO.
                                      :      2:04-CV-2201
                         Plaintiff,   :
                                      :
              v.                      :
                                      :
GENTA INC., ET AL.,                   :
                                      :
                         Defendants.  :
-----------------------------------------------------x
RICHARD JACOBS,                       :      CIVIL ACTION NO.
                                      :      2:04-CV-2231
                         Plaintiff,   :
                                      :
              v.                      :
                                      :
GENTA INC., ET AL.,                   :
                                      :
                         Defendants.  :
-----------------------------------------------------x
```

```
---------------------------------------------------x
BERNARD SAGGAU,                            :        CIVIL ACTION NO.
                                           :        2:04-CV-2232
                          Plaintiff,       :
                                           :
                   v.                      :
                                           :
GENTA INC., ET AL.,                        :
                                           :
                          Defendants.      :
---------------------------------------------------x
BONNIE ROST,                               :        CIVIL ACTION NO.
                                           :        2:04-CV-2245
                          Plaintiff,       :
                                           :
                   v.                      :
                                           :
GENTA INC., ET AL.,                        :
                                           :
                          Defendants.      :
---------------------------------------------------x
ABRAHAM MEISNER,                           :        CIVIL ACTION NO.
                                           :        2:04-CV-2246
                          Plaintiff,       :
                                           :
                   v.                      :
                                           :
GENTA INC., ET AL.,                        :
                                           :
                          Defendants.      :
---------------------------------------------------x
MILTON PFEIFFER,                           :        CIVIL ACTION NO.
                                           :        2:04-CV-2314
                          Plaintiff,       :
                                           :
                   v.                      :
                                           :
GENTA INC., ET AL.,                        :
                                           :
                          Defendants.      :
---------------------------------------------------x
```

Genta-LdPlMem.wpd                          iii

```
--------------------------------------------------x
ANGELICA L. FURLA,                      :     CIVIL ACTION NO.
                                        :     2:04-CV-2392
                        Plaintiff,      :
                                        :
            v.                          :
                                        :
GENTA INC., ET AL.,                     :
                                        :
                        Defendants.     :
--------------------------------------------------x
JOHN F. ELLIOT,                         :     CIVIL ACTION NO.
                                        :     2:04-CV-2466
                        Plaintiff,      :
                                        :
            v.                          :
                                        :
GENTA INC., ET AL.,                     :
                                        :
                        Defendants.     :
--------------------------------------------------x
BARRY GERARD,                           :     CIVIL ACTION NO.
                                        :     2:04-CV-2471
                        Plaintiff,      :
                                        :
            v.                          :
                                        :
GENTA INC., ET AL.,                     :
                                        :
                        Defendants.     :
--------------------------------------------------x
JOHN F. ELLIOT,                         :     CIVIL ACTION NO.
                                        :     2:04-CV-2498
                        Plaintiff,      :
                                        :
            v.                          :
                                        :
GENTA INC., ET AL.,                     :
                                        :
                        Defendants.     :
--------------------------------------------------x
```

```
-----------------------------------------------x
DAVID GREENBERG,                           :     CIVIL ACTION NO.
                                           :     2:04-CV-2576
                        Plaintiff,         :
                                           :
              v.                           :
                                           :
GENTA INC., ET AL.,                        :
                                           :
                        Defendants.        :
-----------------------------------------------x
CASEY M. MCGUANE,                          :     CIVIL ACTION NO.
                                           :     2:04-CV-2581
                        Plaintiff,         :
                                           :
              v.                           :
                                           :
GENTA INC., ET AL.,                        :
                                           :
                        Defendants.        :
-----------------------------------------------x
HAROLD FULLEN,                             :     CIVIL ACTION NO.
                                           :     2:04-CV-2664
                        Plaintiff,         :
                                           :
              v.                           :
                                           :
GENTA INC., ET AL.,                        :
                                           :
                        Defendants.        :
-----------------------------------------------x
CORY HECHLER,                              :     CIVIL ACTION NO.
                                           :     2:04-CV-2665
                        Plaintiff,         :
                                           :
              v.                           :
                                           :
GENTA INC., ET AL.,                        :
                                           :
                        Defendants.        :
-----------------------------------------------x
```

---------------------------------------------------------x

**WILLIAM T. DEANE,**                             :          **CIVIL ACTION NO.**
                                                 :          **2:04-CV-2876**
                            **Plaintiff,**        :
                                                 :
                    **v.**                        :
                                                 :
**GENTA INC., ET AL.,**                           :
                                                 :
                            **Defendants.**       :

---------------------------------------------------------x

**ARTHUR SIEGAL,**                                :          **CIVIL ACTION NO.**
                                                 :          **2:04-CV-2908**
                            **Plaintiff,**        :
                                                 :
                    **v.**                        :
                                                 :
**GENTA INC., ET AL.,**                           :
                                                 :
                            **Defendants.**       :

---------------------------------------------------------x

**JOHN T. JACOBUS,**                              :          **CIVIL ACTION NO.**
                                                 :          **2:04-CV-2936**
                            **Plaintiff,**        :
                                                 :
                    **v.**                        :
                                                 :
**GENTA INC., ET AL.,**                           :
                                                 :
                            **Defendants.**       :

---------------------------------------------------------x

Genta-LdPIMem.wpd                    vi

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NATURE OF THE ACTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS . . . . . . . . . . . . . . . . . . 6

      A.    The Procedures Mandated By The PSLRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.    Movants Satisfy The Requirements Of The Act . . . . . . . . . . . . . . . . . . . . . . . . . 7

            1.    The Proposed Lead Plaintiffs Have The Largest Financial
                  Interest In The Relief Sought By The Class . . . . . . . . . . . . . . . . . . . . . . . 7

            2.    Courts Approve the Appointment of a Lead Plaintiff Group . . . . . . . . . . 10

            3.    The PSLRA Expresses No Preference For The Appointment
                  Of An Institution As A Lead Plaintiff Over An Individual
                  Or Individuals With Just as Substantial Losses . . . . . . . . . . . . . . . . . . . . 11

            4.    Selecting Both Institutional And Individual Investors
                  As A Lead Plaintiff Group Will Provide All Members
                  Of The Class With Adequate Representation . . . . . . . . . . . . . . . . . . . . . 12

            5.    Movants Satisfy The Requirements Of Rule 23
                  Of The Federal Rules Of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . 14

            6.    Movants' Claims Are Typical Of The Claims Of The Class . . . . . . . . . 14

            7.    Movants Will Fairly And Adequately Represent The
                  Interests Of The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.   THIS COURT SHOULD APPROVE MOVANTS' CHOICE OF
      CO-LEAD COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.  THESE ACTIONS SHOULD BE CONSOLIDATED . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

### CASES

*In re Baan Co. Sec. Litigation,*
    186 F.R.D. 214 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*In re Cell Pathways, Inc. Sec. Litigation,*
    203 F.R.D. 189 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Cendant Corp. Litigation,*
    182 F.R.D. 144 (D.N.J. 1998)         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Cendant Corp. Litigation,*
    264 F.3d 201 (3d Cir. 2001)     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11, 14, 16

*In re Cendant Corporation Litigation,*
    182 F.R.D. 476 (D. N.J. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Cephalon Sec. Litigation,*
    1996 U.S. Dist. LEXIS 13492 (E.D. Pa. Aug. 27, 1996)     . . . . . . . . . . . . . . . . . . . . . . . . 8

*Chill v. Green Tree Financial Corp.,*
    181 F.R.D. 398 (D. Minn. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*D'Hondt v. Digi International,*
    1997 WL. 405668 (D. Minn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Drexel Lambert  Group, Inc.,*
    960 F.2d 285 (2d. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Eisenberg v. Gagnon,*
    766 F.2d 770 (3rd Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Eisenberg v. Gagnon,*
    766 F.3d at 786  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Electro-Catheter Sec. Litigation, [1987-88 Transfer Binder],*
    Fed. Sec. L. Rep. (CCH) ¶93,643 (D.N.J. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation,*
    55 F.3d 768 (3d Cir. 1995)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gluck v. CellStar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hoxworth v. Blinder, Robinson & Co.*,
980 F.2d 912 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Kirschner Medical Corp. Sec. Litigation*,
139 F.R.D. 74 (D. Md. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*In re Laborers Local 1298 Pension Fund v. Campbell Soup Co.*,
2000 U.S. Dist. LEXIS 5481 (D.N.J. April 24, 2000) . . . . . . . . . . . . . . . . . . . 8, 11, 13

*Lax v. First Merchants Acceptance Corp.*,
1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) . . . . . . . . . . . . . . . . . . . . . . . 7, 16

*In re Lernout & Hauspie Sec. Litigation*,
138 F. Supp. 2d 39 (D.Mass. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lloyd v. Industrial Bio-Test Laboratories, Inc.*,
454 F. Supp. 807 (S.D.N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Local 144 Nursing Home Pension Fund v. Honeywell International, Inc.*,
2000 U.S. Dist. LEXIS 16712 (D.N.J. Nov. 16, 2000) . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*In re Lucent Technologies, Inc. Sec. Litigation*,
194 F.R.D. 137 (D.N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re MicroStrategy Inc. Sec. Litigation*,
110 F. Supp. 2d 427 (E.D. Va. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Netsky v. Capstead Mortg. Corp.*,
2000 U.S. Dist. LEXIS 9941 (N.D. Tex., July 12, 2000) . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Nice System Ltd. Sec. Litigation*,
188 F.R.D. 206 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Olsten Corp. Sec. Litigation*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Oxford Health Plans Inc. Sec. Litigation*,

182 F.R.D. 42 (S.D.N.Y. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12

*In re: Razorfish, Inc. Securities Litigation,*
143 F. Supp. 2d 304 (S.D.N.Y. 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Ribozyme Pharmaceuticals, Inc., Sec. Litigation,*
192 F.R.D. 656 (D. Colo. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Royal Ahold N.V. Securities and ERISA Litigation,*
219 F.R.D. 343 (D. Md. 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 14, 16

*Simpson v. Specialty Retail Concepts,*
149 F.R.D. 94 (M.D.N.C. 1993)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Smith v. Suprema Specialties, Inc.,*
206 F. Supp. 2d 627 (D.N.J. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Telxon Corp. Sec. Litigation,*
67 F. Supp. 2d 803 (N.D. Ohio 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Werner v. Satterlee, Stephens, Burke & Burke,*
797 F. Supp. 1196 (S.D.N.Y. 1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wetzel v. Liberty Mutual Insurance Co.,*
508 F.2d 239 (3rd Cir. 1975)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Zinberg v. Washington Bancorp, Inc.,*
138 F.R.D. 397 (D.N.J. 1990)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATUTES

Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4  . . . . . . . . . 1

PSLRA, 15 U.S.C. §78u4(a)(3)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

PSLRA, 15 U.S.C. §78u4(a)(3)(II)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PSLRA, 15 U.S.C. § 78u-4(e)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 7, 10, 16

PSLRA, 15 U.S.C. §78u(a)(3)(I)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**MISCELLANEOUS**

Moore, <u>Manual for Complex Litigation,</u> § 20.123, at 13-14 (3d Ed. 1995) . . . . . . . . . . . . . 18, 19

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY
BIODUN JAIYESIMI, ARK CAPITAL MANAGEMENT, LLC,
JAY AND DEBORAH WASSERMAN, AND JANAK JETHMALANI
FOR CONSOLIDATION, FOR THEIR APPOINTMENT AS LEAD PLAINTIFFS
AND FOR APPROVAL OF LEAD PLAINTIFFS' SELECTION OF LEAD COUNSEL**

## PRELIMINARY STATEMENT

Biodun Jaiyesimi, Ark Capital Management, LLC, Jay and Deborah Wasserman, and Janak

Jethmalani ("Movants" or the "Proposed Lead Plaintiffs") collectively have lost over $2 million as

a result of their investments in Genta Inc. ("Genta" or the "Company") securities during the Class

Period from March 26, 2001 through May 3, 2004. Movants respectfully submit this memorandum

of law in support of their Motion: (a) for their appointment as Lead Plaintiffs, pursuant to the Private

Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4; and (b) for approval

of their selection of Berger & Montague, P.C. and Vianale & Vianale LLP as Plaintiffs' Lead

Counsel and Cohn Lifland Pearlman Herrmann & Knopf LLP as Plaintiffs' Liaison Counsel.

Movants are believed to be the investors with the largest financial interest in the outcome of

the case.[1]  As such, Movants meet the requirements of the PSLRA for appointment as Lead

---

[1]     Movants' certifications listing their transactions in Genta securities, as required by §
21D(a)(2) of the PSLRA, are attached to the accompanying Declaration of Barbara A. Podell ("BAP
Decl.") as Exhibit A.  A chart detailing their losses is attached to the BAP Decl. as Exhibit B.
Movants' losses for purposes of the current motion are not necessarily the same as their legally
compensable damages, measurement of which is often a complex legal question which cannot be
determined at this stage of the litigation. The approximate losses can, however, be determined from
the trading data, as set forth in the sworn certifications of the Proposed Lead Plaintiffs and based
upon information concerning the market prices for the Company's securities.  Damages were
calculated by taking the difference between the purchase price per share paid by the Movants and
the sale price per share (or settle-out price where the securities were retained as of the last date of
the Class Period) and multiplying that difference by the number of shares purchased by the Movants.
Sales were offset against purchases using the "first-in first-out" or "FIFO" methodology. The settle-
out price used for calculating damages was $3.032 per share, the average closing price from May 4,
2004 through June 30, 2004. See 15 U.S.C. § 78u-4(e)(1).

Plaintiffs. Moreover, Movants satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure in that their claims are typical of the claims of the class, and they will fairly and adequately represent the interests of the class.

The losses sustained by each of the proposed Lead Plaintiffs are as follows: Biodun Jaiyesimi suffered a loss of $1,270,122; Ark Capital Management, LLC lost $316,968; Jay and Deborah Wasserman lost $235,329; and Janak Jethmalani lost $275,158. The collective loss was over $2 million. The Proposed Lead Plaintiff group is unaware of any competing motion for appointment as Lead Plaintiff by any person or entity who has sustained a more significant loss from investments in Genta securities during the Class Period.

Movants' choice of counsel should be accepted by this Court. Berger & Montague, P.C. and Vianale & Vianale LLP are nationally recognized firms with extensive experience and expertise in securities fraud and other class actions. Berger & Montague, P.C. has particular expertise and success in prosecuting class actions against drug companies, including, for example, U.S. Bioscience, Inc., Synergen, Inc., Centocor, Inc., Cephalon, Inc., Cell Pathways, Inc., Genentech, Inc. and ViroPharma Inc.

## NATURE OF THE ACTIONS

Pending before this Court are twenty-two securities class action lawsuits by purchasers of Genta securities, against defendants Genta, Raymond P. Warrell, Jr. (Genta's Chief Executive Officer and Chairman), and Loretta M. Itri, M.D. (Genta's President and Chief Medical Officer) ("Individual Defendants"). All cases arise out of the same operative facts and all allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC").

Plaintiffs allege that Genta and the Individual Defendants made material misrepresentations and/or omitted to make material disclosures throughout the proposed Class Period from March 26, 2001 through May 3, 2004 concerning the purported clinical evidence of the safety of the Company's drug, Genasense, as a treatment for advanced melanoma, a deadly type of skin cancer, and the alleged prospects for U.S. Food and Drug Administration ("FDA") approval of the Company's New Drug Application ("NDA") for Genasense.

Genasense is an oncology drug which attempts to target directly the biochemical pathway whereby cancer cells are ultimately killed by chemotherapy. Genasense attempts to inhibit the production of a protein that is found in malignant melanoma and may be a cause of resistance to anti-cancer therapy. Genta's NDA for Genasense seeks approval for Genasense (G3139) in combination with dacarbazine (DTIC) for the treatment of patients with advanced melanoma who have not received prior chemotherapy.

Advanced melanoma is the most deadly form of skin cancer because it has spread throughout the body forming secondary tumors. The incidence of the disease has increased more rapidly than any other cancer, and has more than doubled in the last 30 years. In 2002, almost 54,000 cases of malignant melanoma were diagnosed. Melanoma is the number one cause of cancer death in women aged 25 to 30, and it ranks second in incidence to breast cancer in women 30 to 34. Globally, 132,000 melanoma skin cancers will occur every year, according to the World Health Organization.

Genta conducted a Phase 3 clinical trial of Genasense (G3139) plus dacarbazine (DTIC), comparing dacarbazine alone as first line chemotherapy for metastatic melanoma. The Phase 3 trial for the use of Genasense in combination with dacarbazine for the treatment of advanced melanoma enrolled patients at 140 sites from 12 different counties. A total of 771 patients who had not been

previously treated with chemotherapy were randomly assigned to receive dacarbazine, a standard chemotherapy drug, alone or in combination with Genasense. The primary endpoint was to compare the overall survival between the two treatment arms. Secondary endpoints included comparative analyses of progression-free survival (PFS) and tumor response (RR).

During the Class Period, defendants falsely represented to the investing public that Genasense did not appear to be associated with serious adverse reactions. In fact, defendants knew that the use of Genasense was associated with increased toxicity and discontinuations due to adverse events, and that FDA approval of the Genasense NDA was unlikely because the increased toxicity and adverse events associated with the use of Genasense outweighed its marginal benefits.

Specifically, defendants knew that (a) 69 (18.6%) patients discontinued therapy for adverse events on the G3139 arm versus 39 (10.8%) on the DTIC arm alone; (b) the rate of serious adverse events was 40% on the G3139 arm versus 27% on DTIC alone; (c) all toxicities were more frequent on the Genasense arm; (d) the frequency of grade 3-4 adverse events, serious adverse events and treatment emergent adverse events leading to discontinuation were all higher on the Genasense arm; (e) the incidence of thrombocytopenia, a serious bleeding disorder characterized by a marked decrease in the number of blood platelets, was 28.8% in the Genasense arm, compared with 11.1% in the DTIC arm; (f) pyrexia (fever) was three times as frequent on the Genasense arm with 53.1% in the Genasense arm, compared to 17.5% on the DTIC arm; (g) neutropenia (significantly reduced white blood cells) and anorexia were twice as frequent with Genasense; (h) upper extremity thrombosis (blood clots) occurred in 5% of the patients receiving Genasense, compared with .8% of the patients receiving DTIC alone; (i) in the Genasense arm, 18.6% of patients discontinued treatment permanently, compared with 10.8% on the DTIC arm; (j) since the dosing of DTIC was

identical on the two arms, toxicity increases were due to the addition of G3139; (k) the study failed to show a survival benefit from the combination of Genasense and dacarbazine for the intention-to-treat population (p=0.18); (l) in a large study with a very small systematic study arm bias, statistically significant differences may be observed which are false positive; (m) since most patients were asymptomatic at the time they entered the study, it was difficult to assess whether they received any benefit from the combination of Genasense and dacarbazine; (n) the study failed to demonstrate a survival benefit; (o) small differences in progression-free survival do not represent clinical benefit for metastatic melanoma patients, especially in an asymptomatic patient population; and (p) approval of an NDA for treatment of melanoma requires substantial evidence of efficacy and improvements in progression-free survival and tumor response rate are not correlated to improvement in survival.

On April 30, 2004, the staff of the Oncologic Drugs Advisory Committee (ODAC) of the FDA stated in briefing materials in advance of the May 3, 2004 ODAC meeting that the Phase 3 clinical trial of Genasense failed to demonstrate a survival benefit, which was the primary trial endpoint. However, small but unreliable benefits were seen for progression-free survival (PFS) and response rates (RR). The staff also stated: "Uncertainty also exists regarding whether an improvement in PFS and RP of this magnitude outweighs the increase in toxicity seen with the combination [of Genasense and dacarbazine.]: . . . Survival was not improved and toxicity was increased." As a result of this announcement, the price of Genta shares dropped $5.83 or 40.4% to close at $8.60 on the Nasdaq market on an unusually high volume of over 30 million shares traded.

On May 3, 2004, the ODAC ruled by a 13-3 vote that, in the absence of increased survival, the evidence presented did not provide substantial evidence of effectiveness to outweigh the increased toxicity of Genasense. As a result of this announcement, the price of Genta shares fell

more than $3 per share, to close at $5.11 on May 3, 2004 at a high volume of over 17 million shares traded.

## I.

## MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS

### A.    The Procedures Mandated By The PSLRA

The PSLRA has established a procedure that governs the appointment of Lead Plaintiffs in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(I).

First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing Class members of their right to file a motion for appointment as Lead Plaintiffs. 15 U.S.C. §78u-4(a)(3)(A)(I). Here, counsel in the first filed action caused the first notice to be published via *PRNewswire* on May 4, 2004. (Exh. C, BAP Decl.) This notice stated that any motion for the appointment as Lead Plaintiff was due "no later than July 5, 2004."[2]

The PSLRA states that within sixty (60) days after the publication of the notice mandated by the PSLRA, any "person or group of persons" who are members of the proposed Class may apply to the court to be appointed as Lead Plaintiffs, whether or not they have previously filed a complaint in the action. 15 U.S.C §78u-4(a)(3)(B). Movants herein have thus timely filed this motion before the expiration of the 60-day period from such publication.

The PSLRA further provides that within 90 days after publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate, the Court shall consider

---

[2]    Berger & Montague, P.C. filed its first notice on May 4, 2004, and another notice on May 7, 2004, announcing that it had expanded the Class Period to begin on March 26, 2001. (Exh. C, BAP Decl.)

any motion made by a Class member and shall appoint as Lead Plaintiff(s) the member or members of the Class that the Court determines to be most capable of adequately representing the interests of the Class members, 15 U.S.C. §78u-4(a)(3)(B). In determining who is the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person **or group** of persons that
>
> (aa)  has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii) (emphasis added).  See generally Greebel v. FTP Software, 939 F. Supp. 57, 64 (D. Mass. 1996).

### B.    The Proposed Lead Plaintiffs Satisfy The Requirements Of The Act

#### 1.    The Proposed Lead Plaintiffs Have The Largest Financial Interest In The Relief Sought By The Class

Based on counsel's knowledge to date, Biodun Jaiyesimi, Ark Capital Management, LLC, Jay and Deborah Wasserman, and Janak Jethmalani possess, in the aggregate, the largest and most significant interest in the outcome of this litigation.  The Movants are therefore presumed to be the "most adequate" plaintiffs.  15 U.S.C. §78u(a)(3)(B)(iii)(I)(bb).

Numerous courts have interpreted the statute to mean that the person or group who has the largest financial stake in the litigation is presumed to be the "most adequate" plaintiff to represent the class.  See e.g., In re Cendant Corp. Litig., 264 F.3d 201, (3d Cir. 2001); Lax v. First Merchants

Acceptance Corp., 1997 U.S. Dist. LEXIS 11866 at *3 (N.D. Ill. Aug. 6, 1997) (members of moving group with largest collective financial interest are presumptive lead plaintiffs).

It is evident from the statutory language that a Lead Plaintiff group may be appointed under the Act. See, e.g., Laborers Local 1298 Pension Fund v. Campbell Soup Co., 2000 U.S. Dist. LEXIS 5481 (D.N.J. April 24, 2000) (appointing group of three as lead plaintiffs); Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc., 2000 U.S. Dist. LEXIS 16712 at *13 (D.N.J. Nov. 16, 2000) (appointing group of five unrelated institutions with no pre-litigation relationship as lead plaintiff); In re Nice Sys. Ltd. Sec. Litig., 188 F.R.D. 206 (D.N.J. 1999) (appointing group of five individual investors as lead plaintiffs); In re Cendant Corp. Litig., 182 F.R.D. 144 (D.N.J. 1998) (appointing group of three as lead plaintiffs); In re Oxford Health Plans Inc. Sec. Litig., 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (appointing group of three as lead plaintiffs); D'Hondt v. Digi International, 1997 WL 405668 (D. Minn. 1997); In re Cephalon Sec. Litig., 1996 U.S. Dist. LEXIS 13492, at *2 (E.D. Pa. Aug. 27, 1996) ("Clearly, the Act does not preclude appointing more than one lead plaintiff."); In re Royal Ahold N.V. Securities and ERISA Litig., 219 F.R.D. 343, 351 (D. Md. 2003)(appointing as Lead Plaintiff previously unrelated institutional investors Public Retirement Association of Colorado and Generic Trading of Philadelphia LLC). See Memorandum of SEC, Amicus Curiae attached to the court's opinion in In re Baan Co. Sec. Litig., 186 F.R.D. 214, 224 (D.D.C. 1999) ("Construing the term 'group of persons' in light of the language and purposes of the Reform Act. . . . The Commission believes that ordinarily this should be no more than three to five persons, a number that will facilitate joint decision-making and also help to assure that each group member has a sufficiently large stake in the litigation.").

Genta-LdPlMem.wpd                          8

The attached Declaration of James Rainey, Chief Executive Officer of Ark Capital Management, LLC (Exhibit E to BAP Decl.), demonstrates that the proposed Lead Plaintiff group is a small, cohesive group which has a structure in place that will enable them to work together as a unified force to direct the litigation and monitor counsel. Proposed Lead Plaintiff Rainey states that the members of the group have spoken to each other, they have established a plan and structure to monitor the litigation and direct counsel, have an agreement regarding fees with their counsel and have the background and investment experience to effectively perform these functions. As a result, they have demonstrated that they can effectively manage the litigation with one voice and should be appointed Lead Plaintiffs. See Smith v. Suprema Specialties, Inc., 206 F. Supp. 2d 627, 635-36 (D.N.J. 2002); In re Lucent Technologies, Inc. Sec. Litig., 194 F.R.D. 137, 151 (D.N.J. 2000); In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39, 45 (D.Mass. 2001); Local 144 Nursing Home Pension Fund v. Honeywell Int'l Inc., 2000 U.S. Dist. LEXIS 16712 at *13.

Furthermore, as demonstrated herein, Movants satisfy all of the prerequisites for appointment as Lead Plaintiffs pursuant to section 21D(a)(3)(B). Movants believe that they have, in the aggregate, the largest known financial interest in the outcome of the litigation and otherwise meet all of the requirements of Rule 23. Movants have a collective loss (for present statutory purposes) of over $2 million. See BAP Decl., Exhibit B. This significant loss demonstrates the Proposed Lead Plaintiffs' compelling stake in the litigation.

## 2.   Courts Approve the Appointment of a Lead Plaintiff Group

The PSLRA provides that the most adequate plaintiff may be a "person or group of persons," or "member or members of the proposed plaintiff class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); § 78U-4(a)(3)(B)(I).  The SEC, filing briefs as *amicus curiae* in several cases, has taken the position that courts should limit any proposed lead plaintiff group to a small number capable of managing the litigation, usually three to five investors.

As the SEC argued in a brief *amicus curiae* filed in In re Baan Co. Sec. Litig., 186 F.R.D. 214, 217 (D.D.C. 1999):

> Construing the term 'group of persons' in light of the language and purposes of the Act, a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers.  The commission believes that ordinarily this should not be more than three to five persons, a number that will facilitate joint decision making and also help to assure that each group member has a sufficiently large stake in the litigation.

In re Baan, 186 F.R.D. at 217 (quoting attached SEC brief *amicus curiae* at 16-17).

In  In re Cendant Corp. Litig., 264 F.3d 201, 266 (3d Cir. 2001), the court held that "[t]he PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff."  264 F.3d at 266.  The Cendant court also rejected the position -- advanced by several district courts -- that a group of "unrelated individuals" is precluded from serving as lead plaintiff under the PSLRA: "The statute contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'" Id.

The <u>Cendant</u> court's analysis is consistent with the vast majority of decisions permitting appointment of a small group of investors.[3] <u>See, e.g.,</u> <u>In re Oxford Health Plans, Inc. Sec. Litig.,</u> 182 F.R.D. 42 (S.D.N.Y. 1998)(using tri-partite lead plaintiff structure, with two institutions and one group of three individuals); <u>In re Cell Pathways, Inc. Sec. Litig.,</u> 203 F.R.D. 189, 192 (E.D. Pa. 2001)(appointing group of four to serve as lead plaintiff); <u>In re Ribozyme Pharmaceuticals, Inc., Sec. Litig.,</u> 192 F.R.D. 656, 662 (D. Colo. 2000)(appointing lead plaintiff group of four); <u>In re Laborers Local 1298 Pension Fund v. Campbell Soup Co.,</u> 2000 U.S. Dist. LEXIS 5481, at *11 (appointing institution and two individual investors as co-lead plaintiffs); <u>In re Royal Ahold N.V. Sec. and ERISA Litig.,</u> 219 F.R.D. at 355 (appointing as lead plaintiff a combination of previously unrelated institutional investor Public Employees Retirement Association of Colorado and Generic Trading of Philadelphia LLC).

### 3. The PSLRA Expresses No Preference For The Appointment Of An Institution As A Lead Plaintiff Over An Individual Or Individuals With Just as Substantial Losses

Proposed Lead Plaintiffs, who collectively lost over $2 million, have a great financial incentive to seek appointment as Lead Plaintiffs. Because Congress recognized the incentive possessed by anyone who demonstrates that he or she has suffered a substantial financial loss, institutional investors, while desirable as Lead Plaintiffs, are not favored or given priority status to the exclusion of individual investors. Indeed, the Statement of Managers, which provides explanatory comments explaining Congressional intent in enacting the PSLRA specifically states:

---

[3]    In <u>Cendant</u>, 264 F.3d at 266, the court determined that although there is no "hard-and-fast-rule," courts should "generally presume that groups with more than five members are too large to work effectively," and therefore are not adequate lead plaintiffs. <u>Id.</u> (citing *amicus curie* brief submitted by the SEC).

> Institutional investors and <u>other class members with large amounts at stake will</u>
> <u>represent the interests of the plaintiff class more effectively</u> than class members with
> small amounts at stake.  The claims of both types of class members generally will be
> typical.  (Emphasis added).

*Statement of Managers*, Act. Sec. 101 ¶ 302 at p. 61.

Courts have adopted the Congressional intent expressed in the Statement of Managers.  It is

clear that if Congress had intended institutional investors to receive preference, Congress would have

said so.  Instead, as the court aptly explained in <u>In re Telxon Corp. Sec. Litig.</u>, 67 F. Supp. 2d 803,

821-22 (N.D. Ohio 1999), Congress explicitly mandated that the criteria for the most adequate

plaintiff is the size of the proposed Lead Plaintiff's financial loss:

> <u>The Institutional investor is not presumptively the most adequate plaintiff solely by</u>
> <u>virtue of its status as an institutional investor.</u>  However, if that were the case,
> Congress would have simply provided that institutional investors are presumptively
> the most adequate plaintiffs, regardless of the size of the financial loss, and saved the
> Court from the need to engage in the very analysis it undertakes here.  <u>Instead,</u>
> <u>Congress chose to use the size of financial loss as the initial proxy for determining</u>
> <u>whether a particular plaintiff would be the "most adequate plaintiff."</u>  (Emphasis
> added)

<u>See also</u> <u>Netsky v. Capstead Mortg. Corp.</u>, 2000 U.S. Dist. LEXIS 9941 * 27 (N.D. Tex., July 12,

2000) ("While Congress has expressed its preference for securities fraud litigation to be directed by

large institutional investors, it also recognized that Class members with large amounts at stake will

represent the plaintiff class more effectively than Class members with small amounts at stake.")

**4.   Selecting Both Institutional And Individual Investors**
**As A Lead Plaintiff Group Will Provide All Members**
**Of The Class With Adequate Representation**

Appointing institutional and individual investors as Lead Plaintiffs is entirely consistent with

the PSLRA and will provide the Class with the most adequate representation.  As the Court stated

in <u>In re Oxford Health Plans, Inc. Securities Litigation</u>, 182 F.R.D. at 49 (emphasis added):

Genta-LdPlMem.wpd                                      12

The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions. Allowing for diverse representation, including in this case a state pension fund, significant individual investors and a large institutional investor, ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants.

In Laborers Local 1298 Pension Fund v. Campbell Soup Co., 2000 U.S. Dist. LEXIS 5481, the court considered three motions for the appointment of lead plaintiff made on behalf of a labor union, the Treasurer of the State of Connecticut, and two individuals ("DeValle" and "Green"), whose investment in the company represented a substantial portion of their retirement funds. Id., at *11. Following the rationale of Oxford Health Plans, the court concluded that the interest of all class members would be best served by the appointment of co-lead plaintiffs comprised of the State of Connecticut and DeValle and Green:

It is the intention of the Court to appoint DeValle, Green and the Treasurer of the State of Connecticut as co-lead plaintiffs pursuant to the PSLRA. Connecticut has the largest financial interest in the suit, and the interest of DeValle and Green, combined, is the second largest. The Court also considers it desirable to have both an institutional investor, like Connecticut, and individual investors, like DeValle and Green, included as lead plaintiffs since each may bring a unique perspective to the litigation.

2000 WL 486956, at *3 (emphasis added).

Since the Proposed Lead Plaintiffs here are a small group including both an institution and individuals, all with significant financial interests in the litigation, the Court can reasonably conclude that the Group will vigorously pursue the claims of all class members.

Genta-LdPlMem.wpd                                    13

### 5.    Movants Satisfy The Requirements Of Rule 23
### Of The Federal Rules Of Civil Procedure

Section 21(D)(3)(B) of the Exchange Act further provides that, in addition to possessing the

largest financial interest in the outcome of the litigation, the Lead Plaintiffs must "otherwise satisfy

the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a

party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2)
> there are questions of law or fact common to the class, (3) the claims or
> defenses of the representative parties are typical of the claims or defenses of
> the class, and (4) the representative parties will fairly and adequately protect
> the interests of the class.

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly

address the personal characteristics of the proposed class representatives. Consequently, in deciding

a motion to appoint Lead Plaintiffs, the Court should limit its inquiry to the typicality and adequacy

prongs of Rule 23(a), and defer examination of the remaining requirements until the plaintiffs move

for class certification. See, e.g., Chill v. Green Tree Financial Corp., 181 F.R.D. 398, 407 at n. 8

(D. Minn. 1998)("a proposed lead plaintiff need only make a preliminary showing that he or she

satisfies the typicality and adequacy requirements of Rule 23"); Gluck v. CellStar Corp., 976 F.

Supp. 542, 546 (N.D. Tex. 1997). As detailed below, Movants satisfy the typicality and adequacy

requirements of Rule 23.

### 6.    Movants' Claims Are Typical Of The Claims Of The Class

Generally, the typicality requirement is satisfied if the claims arise from the same event,

practice or course of conduct that gives rise to the claims of the Class members, and are based on

the same legal theory. Cendant, 264 F. 3d at 265; Eisenberg v. Gagnon, 766 F.2d 770, 786 (3rd Cir.

1985); Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992); In re Royal Ahold N.V. Securities and ERISA Litig., 219 F.R.D. at 350;  In re Kirschner Medical Corp. Sec. Litig., 139 F.R.D. 74, 78-79 (D. Md. 1991); Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397, 406-07 (D.N.J. 1990)( typicality satisfied if class representatives and its members point to the same broad course of alleged fraudulent conduct).   Indeed, to satisfy typicality, the claims of the class representatives do not have to be identical to those of the Class members.  Eisenberg v. Gagnon, 766 F.3d at 786.  The focus of the typicality inquiry is not plaintiffs' behavior, but defendants' behavior. In re Electro-Catheter Sec. Litig., [1987-88 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶93,643 at 97,931 (D.N.J. 1987).

Movants satisfy this requirement because, just like all other Class members, they: (1) purchased Genta securities during the Class Period; (2) at prices alleged artificially inflated by the false and misleading statements issued by defendants or by defendants' failure to disclose material information; and (3) suffered damages thereby.  Thus, their claims are typical of those of other Class members since their claims and the claims of the other Class members arise out of the same course of events.  Because Movants seek to prove that plaintiffs' claims arise from the same events, practice or course of conduct that give rise to the claims of the other Class members, and because Movants' claims are based on the same legal theory, the typicality requirement of Rule 23(a)(3) is satisfied. See Simpson v. Specialty Retail Concepts, 149 F.R.D. 94, 98 (M.D.N.C. 1993).

## 7.   Movants Will Fairly And Adequately Represent The Interests Of The Class

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class.  This requirement is met if it appears that (1) the named plaintiffs have interests in

common with, and not antagonistic to, the class' interests; and (2) the plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation.  See, e.g., In re Drexel Lambert Group, Inc., 960 F.2d 285, 291 (2d. Cir. 1992); In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 800 (3d Cir. 1995); Cendant, 264 F.3d at 265; Royal Ahold, 219 F.R.D. at 350. See also Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3rd Cir. 1975); Simpson, 149 F.R.D. at 102; Kirschner, 139 F.R.D. at 79.

Movants are adequate representatives of the Class.  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Proposed Lead Plaintiffs to represent the Class to the existence of any conflicts between the interests of the Proposed Lead Plaintiffs and the members of the Class, and then allow the Lead Plaintiffs to retain Lead Counsel to represent the Class, "subject to the approval of the court."  See 15 U.S.C. §78u4(a)(3)(B)(v).

The interests of Movants are clearly aligned with the members of the Class, and there is no evidence of any antagonism between the interests of Movants and the Class.  As detailed above, Movants share numerous common questions of law and fact with the members of the Class and their claims are typical of the claims of other Class members.  Further, Movants have selected Berger & Montague, P.C. and Vianale & Vianale LLP to represent them, firms that are highly experienced in prosecuting securities class actions.  Moreover, Movants suffered dramatic losses, and therefore have substantial personal stakes in the litigation.

## II.

### THIS COURT SHOULD APPROVE MOVANTS' CHOICE OF CO-LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiffs, subject to court approval, to select and retain Lead Counsel. See 15 U.S.C. §78u-4(a)(3)(B)(v); see also, e.g., Lax v. First Merchants Acceptance Co., 1997 WL 405668 at *5 (N.D. Ill. Aug. 11, 1997). The Court should not disturb the Proposed Lead Plaintiffs' choice of counsel unless necessary to "protect the interests of the [plaintiff] class." 15 U.S.C. §78u4(a)(3)(B)(iii)(II)(aa). See In re MicroStrategy Inc. Sec. Litig., 110 F. Supp.2d 427, 438 (E.D. Va. 2000) ("The PSLRA plainly states that a district court's duty is to appoint a lead plaintiff based on the relevant statutory criteria . . . it is the lead plaintiff's duty to select and retain counsel to represent the class . . . a district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources ..."). Congress' theory in enacting these provisions "was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff – frequently a large institution or otherwise sophisticated investor – would be motivated to act like a "real" client, carefully choosing counsel and monitoring counsel's performance ..." In re: Razorfish, Inc. Securities Litigation, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001).

Accordingly, Movants have selected and retained Berger & Montague, P.C. and Vianale & Vianale LLP, both of which possess extensive experience in the area of securities litigation and have successfully prosecuted numerous securities fraud actions on behalf of injured investors. See Resumes of Berger & Montague, P.C. and Vianale & Vianale LLP (Exh. D to BAP Decl.). Movants have also selected Cohn Lifland Pearlman Herrmann & Knopf LLP as Liaison Counsel (Exh. D to

BAP Decl.).  In particular, Berger & Montague, P.C. has special expertise in litigating cases against drug companies, having successfully litigated in a Lead or Co-Counsel position securities class actions against, among others, U.S. Bioscience, Inc., Synergen, Inc., Centocor, Inc., Cephalon, Inc., Cell Pathways, Inc., Genentech, Inc. and ViroPharma Inc.  Thus, the Court may be assured that, in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation available.

**III.**

**<u>THESE ACTIONS SHOULD BE CONSOLIDATED</u>**

Consolidation pursuant to Rule 42(a), Fed. R. Civ. P., is appropriate when actions involve common questions of law and fact.  Moore, <u>Manual for Complex Litigation</u>, § 20.123, at 13-14 (3d Ed. 1995).  Rule 42(a), provides that:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trail of any or all of the matters in issue in the action; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary cost or delay.

Consolidation is common in federal securities class action cases.     <u>In re Cendant Corporation Litigation</u>, 182 F.R.D. 476, 478 (D. N.J. 1998).  Indeed, section 21D(a)(3)(B) of the Exchange Act contemplates the consolidation of multiple actions "asserting substantially the same claim or claims."  Moreover, "[n]either Rule 42 nor the PSLRA demands that actions be identical before they may be consolidated."  <u>In re Cendant Corporation Litigation</u>, 182 F.R.D. at 478.

"In securities actions where the complaints are based on the same 'public statements and reports'", as here, "consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced."  <u>Werner v. Satterlee, Stephens, Burke & Burke</u>, 797 F. Supp.

1196, 1211 (S.D.N.Y. 1992) (quoting Lloyd v. Industrial Bio-Test Laboratories, Inc., 454 F. Supp. 807, 812 (S.D.N.Y. 1978)). Accord, e.g., In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 292 (E.D.N.Y. 1998). Further, "the facts and legal issues need not be identical to warrant consolidation." Olsten, 3 F. Supp. 2d at 293.

Consolidation of the cases is appropriate here. Each of the actions is based on substantially similar events and makes the same legal claims under the federal securities laws. The interests of economy and justice therefore militate strongly in favor of a consolidation order. The proposed Order accompanying Movants' motion consolidates these actions and establishes procedures governing consolidated pleadings and pretrial proceedings for the orderly conduct of this litigation. Compare, Manual For Complex Litigation, §§ 41.2 & 41.31.

## IV.

## CONCLUSION

For all the foregoing reasons, Movants respectfully request that the Court appoint them as Lead Plaintiffs under Section 21D(a)(3)(B) of the PSLRA. Movants further request that the Court approve their choice of Berger & Montague, P.C. and Vianale & Vianale LLP as Plaintiffs' Lead Counsel  and Cohn Lifland Pearlman Herrmann & Knopf LLP as Plaintiffs' Liaison Counsel.

Dated: July 5, 2004

      **COHN LIFLAND PEARLMAN**
      **HERRMANN & KNOPF LLP**

    By:  _____
      Peter S. Pearlman (PP8416)
      Park 80 Plaza West-One
      Saddle Brook, NJ 07663
      Tel. (201) 845-9600

Genta-LdPlMem.wpd

**Plaintiffs' Proposed Liaison Counsel**

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Carole A. Broderick
Barbara A. Podell
1622 Locust Street
Philadelphia, PA 19103
Tel. (215) 875-3000

And

**VIANALE & VIANALE LLP**
Kenneth J. Vianale
Julie Prag Vianale
The Plaza Suite 801
5355 Town Center Road
Boca Raton, FL 33486
Tel. (561) 391-4900

**Plaintiffs' Proposed Lead Counsel**